IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LOUIS WILCHIE, JR.                                                                                     PLAINTIFF

vs.                                          Civil No. 6:15-cv-06104-BAB

CAROLYN W. COLVIN                                                                              DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Louis Wilchie, Jr. ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.     Background:**

Plaintiff protectively filed his disability applications for DIB and SSI on June 26, 2012.  (ECF No. 13, p. 13).  In his applications, Plaintiff alleges being disabled due to high blood pressure, knee pain, and asthma.  (ECF No. 13, p. 223).  Plaintiff alleges an onset date of January 1, 2008.  (ECF No. 13, p. 197).  These applications were denied initially and again upon reconsideration.  (ECF No.

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___."  The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

13, pp. 109, 121).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 13, pp. 126, 128). Plaintiff's administrative hearing was held on March 10, 2014, in Little Rock, Arkansas by video teleconference call with the Hot Springs, Arkansas office. (ECF No. 13, pp. 28-60). Plaintiff was present and was represented by Nancy McDonough. *Id.* Plaintiff and Vocational Expert ("VE") Dwight Turner testified at this hearing. *Id.* At this hearing, Plaintiff testified he was forty-three (43) years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(e) (SSI) and 20 C.F.R. § 404.1563(e) (DIB). (ECF No. 13, p. 33). As for his level of education, Plaintiff reported he completed high school and earned a welding certificate from National Park Community College. *Id.*

After this hearing, on July 1, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 13, pp. 10-27). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2013. (ECF No. 13, p. 15, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2008, his alleged onset date. (ECF No. 13, p. 15, Finding 2). The ALJ determined Plaintiff had the following severe impairments: knee osteoarthritis, degenerative disc disease of the thoracic and lumbar spine, asthma, obstructive sleep apnea, lower extremity neuropathy, and morbid obesity. (ECF No. 13, pp. 15-16, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (ECF No. 13, pp. 16-17, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 13, pp. 17-21, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his

claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds and can only occasionally perform each remaining postural function. The claimant cannot operate foot controls. The claimant cannot have exposure to concentrated fumes, odors, or gases, The claimant cannot be exposed to hazards, unprotected heights, and similar hazards.

*Id.*

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW"). (ECF No. 13, p. 21, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 13, pp. 54-58). Based upon the testimony and considering Plaintiff's RFC, the ALJ determined Plaintiff was unable to perform any past relevant work. (ECF No. 13, p. 21, Finding 6). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as assembly jobs like that of a fishing reel assembler, which has a DOT code of 732.684-062, and is sedentary work with a SVP of two (2) with approximately one hundred sixty thousand (160,000) jobs in the national economy, approximately fifteen thousand (15,000) jobs in the regional economy, and approximately four hundred (400) to five hundred (500) jobs in the state of Arkansas, and inspecting jobs like that of a table worker, which has a DOT code of 739.687-182, and is sedentary work with a SVP of two (2) with approximately two hundred thousand (200,000) jobs in the national economy, approximately fifteen thousand (15,000) jobs in the regional economy, and approximately four hundred (400) to five hundred (500) jobs in the state of Arkansas. (ECF No. 13, pp. 21-22). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from January 1, 2008, through the

date of his decision. (ECF No. 13, p. 22), Finding 11).

Thereafter, August 6, 2014, Plaintiff requested a review by the Appeals Council. (ECF No. 13, pp. 8-9). The Appeals Council denied this request on August 27, 2015. (ECF No. 13, pp. 4-7). On September 28, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on September 29, 2015. (ECF No. 7). This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*,

160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3.    Discussion:**

In her appeal brief, Plaintiff raises three arguments for reversal: (1) the ALJ erred in finding Plaintiff does not meet Listing 3.10(H) for his extremely severe sleep apnea and morbid obesity; (2) the ALJ erred in finding Plaintiff did not meet Listing 1.00(B)(2)(b) as a result of Plaintiff's

degeneration of his right knee, lower extremity neuropathy, and neck and back pain; and (3) the ALJ erred in finding Plaintiff could perform sedentary work given the combination of his impairments. (ECF No. 11).

This Court will consider Plaintiff's first and second points together, whether the ALJ erred in determining whether Plaintiff has an impairment that meets or equals a presumptively disabling impairment listed in the regulations .

### A.     The Listings:

The ALJ's decision that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in the Listings is supported by substantial evidence.  The claimant bears the burden of proving his impairment meets or equals the criteria for a specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004)(internal quotations and citation omitted).  Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment.  20 C.F.R. §§ 404.1526, 416.926.  Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted).  While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion.  *see Pepper ex rel. Gardner v. Barnhart*, 342 F.3d, 853, 855 (8th Cir. 2004), *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)("There is no

error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

Plaintiff specifically contends the ALJ erred in finding Plaintiff did not meet the criteria of listing 3.10(H). The ALJ determined as follows:

> Regarding the claimant's obstructive sleep apnea, the record does not include evidence of cor pulmonale with a mean pulmonary artery pressure greater than 40 mm Hg or arterial hypoxemia; the record also does not show that such impairment has caused disturbances in the claimant's cognitive function.

(ECF No. 13, p. 17). The listing "3.10(H)" to which Plaintiff refers in his brief is listing 3.10, sleep-related breathing disorders, which the listing requires the ALJ to, "[e]valuate under 3.09 (chronic cor pulmonale) or 12.02 (organic mental disorders)." 20 C.F.R., Part 404, Subpt. P. App. 1 § 3.10. Listing 3.09 requires "[c]linical evidence of cor pulmonale (documented according to 3.00G) with: "A. Mean pulmonary artery pressure greater than 40 mm HG; [o]r B. Arterial hypoxemia. Evaluate under the criteria in 3.02C2." 20 C.F.R., Part 404, Subpt. P. App. 1 § 3.09. Section 3.00(G), chronic cor pulmonale and pulmonary vascular disease, states the following:

> The establishment of an impairment attributable to irreversible cor pulmonale secondary to chronic pulmonary hypertension requires documentation by signs and laboratory findings of right ventricular overload or failure. . . . Cardiac catheterization will not be purchased.

20 C.F.R., Part 404, Subpt. P. App. 1 § 3.00G. Section 3.02(C)(2) states, "[a]rterial blood gas values of PO2 and simultaneously determined PCO2 measured while at rest . . . in a clinically stable condition on at least two occasions, three or more weeks apart within a 6-month period, equal to or less than the values specified in the applicable table. . . ." 20 C.F.R., Part 404, Subpt. P. App. 1 § 3.02(C)(2).

It is clear from the record, as pointed out in Plaintiff's brief, Plaintiff's pulmonary artery

pressure or the presence of arterial hypoxemia were never tested. The claimant bears the burden of proving his impairment meets or equals the criteria for a specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Plaintiff's burden is accompanied by the ALJ's duty "to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). In the present case, Plaintiff's treating physicians never determined Plaintiff's treatment plan required them to measure Plaintiff's pulmonary artery pressure or determine the presence of arterial hypoxemia during the period of time for which they were treating Plaintiff for all his impairments. Plaintiff's contention, that the ALJ was required to order further testing, essentially demands this Court assume Plaintiff's treating physicians were negligent in their management of Plaintiff's healthcare in failing to perform the testing, or force the Commissioner to bear Plaintiff's burden to prove his impairment meets or equals the criteria for the listing. This Court will do neither. The evidence before the ALJ showed, "marked improvement with CPAP," during Plaintiff's sleep study conducted on January 31, 2013. (ECF No. 13, p. 351). The Mercy Sleep Disorders Center recommended continuing CPAP treatment and to return to the Center after several weeks of therapy for evaluation of any symptoms of daytime somnolence and to obtain an Epworth Sleepiness Scale score. (ECF No. 13, p. 349). The record does not contain any evidence Plaintiff has followed up with that recommendation. On March 7, 2013, Plaintiff told his healthcare provider at the Charitable Christian Medical Clinic the CPAP machine helped at night but he still fell asleep during the day. (ECF No. 13, p. 326). The healthcare provider ordered Plaintiff to continue treating the impairment with his CPAP machine and did not otherwise alter the course of treatment for his sleep apnea. *Id.* On July 18, 2013, Plaintiff complained of flu and continuing pain in his lower back and the heel of his scapula following a fall in May 2013, and then followed

up with further complaints of persisting back pain on August 1, 2013, but did not complain during either visit that his sleep apnea had worsened or that his current course of treatment was not managing his condition. (ECF No. 13, pp. 321-324). Approximately eight months after Plaintiff's sleep study, on October 3, 2013, Plaintiff presented to the Charitable Christian Medical Clinic with flu symptoms and denied any other complaints. (ECF No. 13, pp. 318-19). Accordingly, the evidence in the record provided a sufficient basis for the ALJ's decision without obtaining additional diagnostic testing.

Plaintiff specifically contends the ALJ erred in finding Plaintiff did not meet the criteria of listing 1.00(B)(2)(b). The ALJ determined as follows:

> the medical evidence does not show that the claimant has an inability to ambulate effectively as defined in 1.00B2b. The medical evidence does not indicate that the claimant's degenerative disc disease of the thoracic and lumbar spine has caused nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively, as defined in 1.00B2b.

(ECF No. 13, p. 17). Section 1.00(B)(2)(b) is not a listing in and of itself, but defines what the regulations mean by a claimant's inability to ambulate effectively for purposes of determining whether a claimant meets the criteria of listings 1.02 and 1.04 considered by the ALJ. Plaintiff, in his brief, defined ineffective ambulation, "as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits functioning of the upper extremities." (ECF No. 11, p. 8). While Plaintiff's definition is generally accurate it is not specific enough. The regulation states:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity

> functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(B)(2)(b).

In the present case, the evidence, substantial evidence in the record as a whole supports the ALJ's determination Plaintiff did not meet the criteria of listing 1.02 or 1.04.  While the record contains thorough objective diagnostic testing which shows Plaintiff suffered from knee osteoarthritis, degenerative disc disease of the thoracic and lumbar spine, lower extremity neuropathy, and obesity, the record does not contain any objective evidence Plaintiff was unable to effectively ambulate as defined by section 1.00(B)(2)(b) of the regulation.  Dr. Mark Larey, D.O., during his consultative exam with Plaintiff on September 26, 2012, observed Plaintiff had decreased range of motion in both knees with crepitance and that he was unable to squat and rise from a squat but his physical examination was otherwise normal.  (ECF No. 13, pp. 289-93).  Dr. Larey noted Plaintiff was able to walk without the use of assistive devices, and assessed Plaintiff with moderate limitations to walking and standing.  *Id.*  The record does not indicate Plaintiff was unable to walk without the use of a walker, two crutches, or two canes.  Moreover, Plaintiff's reported activities of daily living included he prepared his own meals, went outside every day, drove and got out alone, shopped in stores for food, and went to the store and his mothers home regularly.  (ECF No. 13, pp.

210-217). Plaintiff did report using a single cane, but reported only needing to use it three to four times per week. (ECF No. 13, p. 216). Plaintiff also reported only being able to walk half a block without having to stop, but stated the reason he had to stop was because he had to catch his breath. (ECF No. 13, p. 215).

Accordingly, the ALJ's determination Plaintiff could ambulate effectively as defined by 20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(b)(2)(b) is based on substantial evidence on the record as a whole. Moreover, in accordance with the above discussion, the ALJ's determination Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listings is supported by substantial evidence on the record as a whole.

**B.    RFC:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff specifically contends his impairments render him unable to perform the requirements of sedentary work. Plaintiff states in his brief he is unable to sit for any length of time because he "cannot focus on a card game for more than 45 minutes without falling asleep," has "chronic swelling of his legs and ankles," and because, "sitting too long causes chronic back pain." (ECF No. 11, pp. 12-14). Plaintiff does not, however, point to any evidence on the record other than Plaintiff's own subjective complaints and testimony from the VE that there would be no jobs a hypothetical individual could perform who required "more rest breaks than normally allowed," and "if the person because of these sleep issues was going to be constantly interrupted from concentrating and paying attention on the job." (ECF No. 11, pp. 12-14).

The ALJ stated he considered all of Plaintiff's subjective complaints, including evidence that relates to Plaintiff's daily activities, the duration, frequency, and intensity of his pain as well as precipitating and aggravating factors, the dosage, effectiveness, and side effects of his medication, and his functional restrictions. (ECF No. 13, p. 18). The ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (ECF No. 13, p. 18).

The record shows Plaintiff only visited a healthcare provider twice between Plaintiff's alleged onset date of May 29, 2009, and his application date of July 25, 2012, once on June 12, 2012, and again on July 24, 2012, the day before his application date. During his June 12, 2012, healthcare appointment, Plaintiff complained he stopped breathing while sleeping and had edema in his ankles. (ECF No. 13, p. 271). He also stated he had not taken any medication in the preceding three years. *Id.* He was diagnosed with asthma and dependent edema and was prescribed a Proventil inhaler and Lasix 20mg tablets. On July 24, 2012, Plaintiff complained of knee popping, swelling in his ankles,

12

and requested a test for sleep apnea. (ECF No. 13, p. 307). He was diagnosed with obesity, obstructive sleep apnea, and osteoarthritis. *Id.* Plaintiff was prescribed new medications and advised to lose weight. *Id.* Plaintiff's lack of an extensive treatment record from May 2009 until June 2012 is one factor the ALJ may appropriately consider. *Forte v. Barnhart*, 377 f.3d 892, 895 (8th Cir. 2004), *see also Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001)(in assessing credibility, the Court noted that Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing).

As discussed above, the Mercy Sleep Disorders Center recommended continuing CPAP treatment and to return to the Center after several weeks of therapy for evaluation of any symptoms of daytime somnolence and to obtain an Epworth Sleepiness Scale score. (ECF No. 13, p. 349). The record does not contain any evidence Plaintiff has followed up with that recommendation. On March 7, 2013, Plaintiff told his healthcare provider at the Charitable Christian Medical Clinic the CPAP machine helped at night but he still fell asleep during the day. (ECF No. 13, p. 326). The healthcare provider ordered Plaintiff to continue treating the impairment with his CPAP machine and did not otherwise alter the course of treatment for his sleep apnea. *Id.* One would expect that if Plaintiff were experiencing problems with daytime somnolence to such a degree he could not sit to perform any work-like activity without falling asleep as Plaintiff alleged, he would have either followed up with the Mercy Sleep Disorders Center as they proposed, or received adjustment to his treatment plan by his primary healthcare provider. As discussed above, on March 7, 2013, Plaintiff told his healthcare provider at the Charitable Christian Medical Clinic the CPAP machine helped at night but he still fell asleep during the day. (ECF No. 13, p. 326). The healthcare provider ordered Plaintiff to continue treating the impairment with his CPAP machine and did not otherwise alter the course

of treatment for his sleep apnea. *Id.* Moreover, Plaintiff did not complain during either visit that his sleep apnea had worsened or that his current course of treatment was not managing his condition during his following visits on July 18, 2013, and August 1, 2013. (ECF No. 13, pp. 321-324). Approximately eight months after Plaintiff's sleep study, on October 3, 2013, Plaintiff presented to the Charitable Christian Medical Clinic with flu symptoms and denied any other complaints. (ECF No. 13, pp. 318-19).

The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of multiple treating physicians, consultative examining physicians, and non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012)("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Although it is clear Plaintiff suffers with some degree of limitation the Court finds substantial evidence on the record as a whole to support the ALJ's RFC determination for the relevant time period.

4. **Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 11th day of October 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE